```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF MINNESOTA
                       03-CV-5544(JMR/FLN)


Tom Lingenfelter, individually;     )
Phil Florence, individually and as  )
a beneficiary in Empire Paper       )
Company Profit Sharing Plan;        )
Diane S. Blodgett, individually,    )
and as a vested beneficiary;        )
T.G. Morgan, Inc., Defined Benefit  )
Pension Plan                        )
                                    )
           v.                       )       ORDER
                                    )
John Stoebner; Lapp, Libra,         )
Thomson, Stoebner & Pusch, Chtd.;   )
Gordon Conn; Charles Webber;        )
Faegre & Benson, LLP; Kalina,       )
Wills, Gisvold & Clark, PLLP;       )
Larson, Allen, Weishair & Co.,      )
LLP; in their individual            )
capacities; and SafraBank           )
(California), Republic Bank N.A.    )
and H.S.B.C. N.Y., jointly and      )
severally                           )
```

Defendants ask the Court to dismiss plaintiffs' second amended complaint ("Complaint"). Defendants' motions are granted.

I. Background

The apparently endless history of this case is well known to the Courts of the Eighth Circuit and the District of Minnesota. By way of brief recitation, in 1991, T.G. Morgan, Inc. ("TGM"), a rare coin dealer, was shut down by the Federal Trade Commission ("FTC"). Its president, Michael Blodgett, was charged with and convicted of fraud. TGM and its principals (Blodgett and his wife Diane, a plaintiff in this action) settled the civil aspects of the case with the FTC in December, 1991. The settlement agreement divided

TGM's assets in two: a "Settlement Estate," which paid the fraudulently victimized coin buyers; and a "Litigation Estate," which paid the Blodgetts' legal fees. The settlement was incorporated into a final Consent Decree entered in the District of Minnesota in March, 1992. See FTC v. T.G. Morgan, Inc., 4-91-CV-638, 1992 WL 88162 (D. Minn. 1992) (unpublished) (Murphy, J.). Under the terms of the Consent Decree, TGM yielded the Settlement Estate to the FTC.

Shortly after TGM settled with the FTC, TGM's creditors forced it into bankruptcy. The bankruptcy was converted into a Chapter 7 liquidation, with John Stoebner appointed as Trustee. Stoebner hired defendants Faegre & Benson, and its partners Gordon Conn and Charles Webber, to represent him. Stoebner then brought a motion in bankruptcy court asking the FTC to transfer the Settlement Estate as an asset of the bankruptcy estate. FTC v. T.G. Morgan, Inc., No. 4-91-CV-638 (D. Minn., Aug. 21, 1992) (unpublished), see Affidavit of Geraint D. Powell, Ex. B ("Turnover Order").

Several plaintiffs in this action -- Mrs. Blodgett, Phil Florence, and Empire Paper Company Profit Sharing Plan ("Empire Plan") -- objected to the Trustee's motion, claiming "the settlement estate is not property of [TGM]" and that turnover would "undo the final judgment[.]" (Turnover Order at 5.) The bankruptcy court overruled plaintiffs' objections, finding that TGM and the Blodgetts had transferred assets to the Settlement Estate

"irrevocably and without the possibility of reversion to themselves or to any entity owned or controlled by them," and had "waive[d] any and all claims" to the Settlement Estate. Id. at 4, citing Consent Decree, 1992 WL 88162, *4-5.

The bankruptcy court ruled that Mrs. Blodgett, Phil Florence, and the Empire Plan were to litigate any future claims against these funds in bankruptcy court. (Turnover Order at 5.) They did so with a vengeance.[1] Plaintiffs repeatedly challenged the scope and content of the bankruptcy estate, claiming an interest in the assets seized by the Trustee. Each claim was resolved in the bankruptcy court, either by litigation or settlement. Phil Florence and the Empire Plan settled their claims against the estate. (Powell Aff. Ex. H, I, J.) The bankruptcy court ultimately ruled that Tom Lingenfelter, Mrs. Blodgett, and the TGM Defined Benefit Pension Plan ("TGM Plan") had no claims against the estate, and awarded money judgments against Mr. Lingenfelter and Mrs. Blodgett. (Powell Aff. Ex. C-G.)

After the bankruptcy court's judgment, Mrs. Blodgett filed "at least" three civil pro se actions seeking to undo it. Erickson Order at 15, citing Blodgett v. Federal Trade Commission, Civ. No. 3:94-100 (D. Minn. 1994); Blodgett v. Stoebner, Civ. No. 4:95-204

---

[1] The extensive history of the parties' litigation will not be repeated here, but is set out in the Order and Recommendation of the Hon. Raymond L. Erickson, dated March 17, 1999, in Blodgett v. Franco, Civ. No. 98-49 (Affidavit of Jessica J. Dvorak, Ex. A) ("Erickson Order"), aff'd by this Court's Order of June 30, 1999.

(D. Minn. 1995) and Blodgett v. Stoebner, Civ. No. 3:96-76 (D. Minn. 1996) (Powell Aff. Ex. K). All actions were dismissed, see Erickson Order at 15, the last one explicitly on res judicata grounds. Blodgett v. Stoebner, 3:96-76 (D. Minn. July 16, 1996) (Powell Aff. Ex. L.)

Plaintiffs are back, recasting their unavailing arguments, but always based on the same facts. As before, they challenge the Trustee's decision to include certain assets in the bankruptcy estate. Plaintiffs claim that (a) certain of TGM's assets actually belonged to them; (b) the resolution of the FTC litigation created a contract between the FTC and TGM, obliging both parties to preserve these assets for plaintiffs' benefit; (c) the Trustee assumed TGM's responsibilities under this alleged "FTC Contract"; and (d) by liquidating the assets for the benefit of creditors, the Trustee failed to honor his obligations to plaintiffs.

This case claims breach of, and tortious interference with, the "FTC Contract"; breach of fiduciary duties; and breach of duties under the Employee Retirement and Income Security Act, 29 U.S.C. § 1001. Plaintiffs also allege a pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. Casting about for more putative defendants, in a continuing effort to harass the Trustee and his counsel, plaintiffs sue the Trustee's accounting firm; the bank which held some of the assets; the Trustee's employer; and a law firm

employing a lawyer who formerly handled this matter for the Trustee.[2] Every one of defendants' alleged wrongful acts pertain to their handling of the bankruptcy estate.

All defendants move to dismiss. For the reasons discussed herein, their motions are granted, and this action is dismissed with prejudice.

II. Analysis

On a motion to dismiss, a court may consider limited matters outside the pleadings, such as prior court proceedings. In re K-tel Int'l, Inc. Securities Litig., 300 F.3d 881, 889 (8th Cir. 2002). The court "takes the facts in the Complaint as true and in the light most favorable to plaintiffs," but is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." Farm Credit Servs. of Am. v. Am. State Bank, 339 F.3d 764, 767 (8th Cir. 2003).

Here, even as the Court shoulders the almost impossible duty of assuming the facts alleged in the Complaint to be true, it is crystal clear there are many separate and independent grounds upon which to dismiss this action: the Court is without subject matter

---

[2] All defendants have been previously sued by Michael Blodgett and/or others associated with him, including plaintiffs. This Court enjoined Mr. Blodgett from suing these and other defendants without the signature of an attorney admitted to the Court or prior written authorization of the Court. Blodgett v. Franco, Civ. No. 98-49 (D. Minn. June 30, 1999).

jurisdiction; the action is barred by judicial immunity, limitations, collateral estoppel, and res judicata; and the Complaint fails to plead fraud with particularity, and wholly fails to state a claim upon which relief can be granted. Each basis is addressed seriatim.

    A.   <u>This Court Lacks Jurisdiction under the Barton Doctrine</u>

For well over 100 years, the law has barred suits against a trustee in a non-appointing court for acts within the trustee's official capacity without the appointing court's prior leave. <u>Barton v. Barbour</u>, 104 U.S. 126, 128 (1881). This rule, known as the <u>Barton</u> doctrine, protects both the trustee's ability to carry out his official functions, and the bankruptcy estate's assets. <u>In re Ross</u>, 231 B.R. 74, 79 (Bankr. W. D. Mo. 1999). The doctrine maintains the bankruptcy court's control over the bankruptcy estate. Otherwise, creditors could obtain de facto priority by suing the trustee. <u>Barton</u>, 104 U.S. at 128-29; <u>In re DeLorean Motor Co.</u>, 991 F.2d 1236, 1240 (6th Cir. 1993). The <u>Barton</u> rationale extends to agents who are "the functional equivalent of a trustee, where . . . they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets." <u>DeLorean Motor Co.</u>, 991 F.2d at 1241 (extending <u>Barton</u> doctrine to trustee's counsel); <u>see</u> <u>also</u> <u>In re Martin</u>, 287 B.R. 423, 434 (Bankr. E.D. Ark. 2003) (same); <u>Carter v. Rodgers</u>, 220 F.3d 1249, 1252 (11th Cir. 2000) (extending <u>Barton</u> doctrine to

court-approved auctioneer who sold estate property). Here, the Trustee never operated TGM's business; therefore, no limited exception to the Barton doctrine applies. 28 U.S.C. § 959(a).

The law requires the bankruptcy trustee to gather and liquidate the bankruptcy assets.[3] 11 U.S.C. § 704. In doing so, a trustee has the authority and administrative power needed for "collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate[.]" See In re Campbell, 13 B.R. 974, 976 (Bankr. D. Idaho 1981) (holding such actions not subject to § 959 exception); In re Martin, 287 B.R. at 435; Richman v. Batt, 265 B.R. 416, 418-19 (Bankr. E.D. Pa. 2001).

Each act about which plaintiffs complain falls squarely -- and solely -- within the Trustee's administrative capacity. See 11 U.S.C. § 704; Campbell, 13 B.R. at 976-77; Martin, 287 B.R. at 435; Richman, 265 B.R. at 418. Accordingly, the bankruptcy court, which has overseen all aspects of the bankruptcy proceeding, is best placed to evaluate the Trustee's actions and determine whether plaintiffs' suit is appropriate. Richman, 265 B.R. at 419.

Plaintiffs claim they do not need the bankruptcy court's permission, because that court lacks jurisdiction over assets improperly placed in the bankruptcy estate. (Pl. Mem. at 2.) This

---

[3]The Consent Decree itself contemplated that TGM's assets would be turned over to a receiver for liquidation. See Consent Decree, 1992 WL 88162, *7 ("Powers of the Receiver").

circular argument rests precariously on two cases wholly unrelated to the Barton doctrine. See United States v. Whiting Pools, 462 U.S. 198 (1983) (holding bankruptcy court had jurisdiction over property seized by IRS to satisfy tax lien) and The Guild & Gallery Plus, Inc. v. Maggio, 72 F.3d 1171 (3d Cir. 1996) (holding bankruptcy court had no jurisdiction over dispute concerning property the trustee conceded was not part of bankruptcy estate). These authorities are inapposite and give no support for plaintiffs' meritless argument.

Plaintiffs have neither sought nor received permission from the bankruptcy court to bring this action. Accordingly, the Complaint must be dismissed in its entirety for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

   B.  As Agents of the Bankruptcy Court, Defendants are Immune From Suit

Bankruptcy trustees and their counsel are afforded qualified immunity for acts within the scope of their authority, and complete immunity when acting pursuant to court order. Smallwood v. United States, 358 F. Supp. 398, 404 (E.D. Mo. 1973), aff'd, 486 F.2d 1407 (8th Cir. 1973). Immunity is appropriate where, as here, the Trustee and his agents have had no contact with plaintiffs "in any manner other than in an official capacity." Id. In determining whether immunity is appropriate, the Court considers "the nature of the function performed, not the identity of the actor who performed it." Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993).

8

Plaintiffs advance essentially the same argument they used against application of the Barton doctrine: because the Complaint addresses property allegedly not part of the bankruptcy estate, any actions of defendants with respect to that property -- even pursuant to court order -- could not have been taken in an official capacity. (Pl. Mem. at 2-3.) For the reasons set forth above, this argument fails.

Defendants' immunity does not depend on whether the disputed assets were properly included in the bankruptcy estate. Rather, it depends upon whether defendants were performing functions associated with the administration of the bankruptcy estate. As discussed above, collecting and liquidating assets are essential functions of administering the estate. Therefore, defendants are immune from suit as a matter of law, and plaintiffs' Complaint against them must be dismissed.[4]

C.   All Claims Accrued Outside the Limitations Period

This lawsuit, filed in October, 2003, is based on early 1990 events. The bankruptcy estate received the disputed assets in 1992. All plaintiffs were involved in litigation concerning these matters more than six years prior to filing this action, many in cases involving identical claims. Plaintiffs have clearly been aware of their claims for more than six years.

---

[4] In one of Michael Blodgett's prior actions, the Trustee and his law firm were found to be immune from suit on these very grounds. See Erickson Order at 21 n. 8.

9

Accordingly, all applicable statutes of limitation have passed. See Minn. Stat. § 541.05, subd. 1 (2002) (six years on breach of contract, breach of fiduciary duty, and tortious interference with contract); Rotella v. Wood, 528 U.S. 549, 553 (2000) (four years on civil RICO); 29 U.S.C. § 1113 (2003) (under ERISA, 3 years from the date of actual knowledge of a breach of fiduciary duty, or 6 years from the date of the last action constituting the breach).  The fact that each claim is time-barred is another reason why plaintiffs' claims must be dismissed.

The Complaint identifies only one event arguably within a six-year limitations period:  the Trustee and a tax preparer at the accounting firm of Larson, Allen signed and submitted a tax return on behalf of the estate in February, 1999.  This return was prepared for the 1992 tax year, and was the only tax return filed on behalf of the estate. (Complaint ¶ 59.)  Plaintiffs claim the return "fraudulently omitted from any income tax accounting significant assets belonging to the Third Party beneficiaries of the FTC Contract" which had been "listed in affidavits prior to 1995 as being in the possession of the TGM bankruptcy estate[.]" (Complaint ¶ 63.)  In other words, plaintiffs allege that the tax return did not acknowledge their ownership of assets they deemed improperly included in the bankruptcy estate.

10

Viewing these allegations most charitably, the Complaint makes clear that plaintiffs' claims for breach of contract, breach of fiduciary duty, and tortious interference with contract accrued well before the filing of the 1999 tax return. Parkhill v. Minnesota Mutual Life Ins. Co., 174 F. Supp. 2d 951, 957 n.1 (D. Minn. 2000) (Minnesota law governs limitations statutes), aff'd, 286 F.3d 1051 (8th Cir. 2002). Indeed, plaintiffs brought several lawsuits against these same defendants long before the tax return was filed, and all based on the same allegations. The Complaint set forth no facts suggesting plaintiffs relied on or suffered harm due to the filing of the tax return. Accordingly, the Court finds the tax return preparation date is irrelevant to, and does not extend, the limitations period. As all of the conduct complained of occurred more than six years prior to the filing of this Complaint, plaintiffs' claims are time-barred.

    D.   This Action is Barred by Res Judicata and Collateral Estoppel

A judgment on the merits in a prior action bars a second suit involving the same parties or their privies based on the same cause of action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5 (1979). For res judicata purposes, a bankruptcy court's allowance or disallowance of a claim constitutes a final judgment. United States v. Coast Wineries, 131 F.2d 643, 648 (9th Cir. 1942).

Whether a cause of action is the same for res judicata purposes depends on the facts presented, not the legal violations

alleged. See Lane v. Peterson, 899 F.2d 737, 744 (8th Cir. 1990). "[W]here a plaintiff fashions a new theory of recovery or cites a new body of law that was arguably violated by defendant's conduct, res judicata will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim." Id.; see also Murphy v. Jones, 877 F.2d 682, 684 (8th Cir. 1989). Res judicata applies to any grounds that actually were or could have been raised in the prior action. Poe v. John Deere Co., 695 F.2d 1103, 1105 (8th Cir. 1982); Martin, 287 B.R. at 433; Wilson v. Comm'r of Revenue, 619 N.W.2d 194, 198 (Minn. 2000).

It is more than abundantly clear that this matter raises precisely the same causes of action as plaintiffs' earlier lawsuits. All claims arise from a common nucleus of operative fact -- the Trustee's inclusion of certain assets in the TGM bankruptcy estate.

Mrs. Blodgett and the TGM Plan litigated these issues twice -- in the bankruptcy court and here in this court -- each time losing claims against Trustee Stoebner. Each Court has entered final judgments involving these matters. A comparison of this Complaint and the prior lawsuits reveals that both involve the same nucleus of operative fact. Therefore, Mrs. Blodgett's and the TGM Plan's claims are barred by res judicata.

Mr. Lingenfelter, Mr. Florence, and the Empire Plan litigated their claims in bankruptcy court. As with Mrs. Blodgett and the

12

TGM Plan, all claims addressed the inclusion of certain assets within the bankruptcy estate. The bankruptcy court had subject matter and personal jurisdiction. Final judgments were entered resolving the claims. These claims are barred by collateral estoppel.

    E.   <u>The Complaint Fails to State a Cause of Action</u>

Dismissal is appropriate where plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the Court must accept plaintiff's factual allegations as true, but must reject "conclusions of law and unwarranted inferences." <u>Silver v. H & R Block, Inc.</u>, 105 F.3d 394, 397 (8th Cir. 1997).

As with its many predecessors, the Complaint here consists of no more than legal conclusions and unwarranted inferences. Plaintiffs claim defendants deprived them of an interest in assets contained in the Settlement Estate. But this Court and others have previously held that neither Mrs. Blodgett nor TGM nor plaintiffs retained any interest in these assets once they were transferred to the FTC.[5] Because plaintiffs have failed to plead facts showing they were allowed any interest in the transferred assets, there is no set of facts which can support their conclusions regarding the

---

    [5]Plaintiffs' reliance on <u>In re T. G. Morgan, Inc.</u>, 172 F.3d 607 (8th Cir. 1999) is unavailing. <u>Morgan</u> addressed the disposition of the Litigation Estate, and has no bearing on the Settlement Estate.

13

Trustee's handling of those assets.

To the extent they seek damages for breach of what they call the "FTC Contract," their Complaint provides yet another basis for dismissal. The agreement between the FTC and TGM was entered on consent as a final judgment and order. A consent decree is a judicial act, not a contract. United States v. Swift & Co., 286 U.S. 106, 115 (1932). Indeed, the Court of Federal Claims has considered Michael Blodgett's argument that this Consent Decree is a contract, and has expressly rejected it. That decision, too, is res judicata. Blodgett v. United States, No. 94-1069 (Fed. Cl.), aff'd, 101 F.3d 713, 1996 WL 640238 (Fed. Cir. 1996). Absent a contract, plaintiffs' claims of breach of contract and tortious interference fail.[6]

   F.   No Aiding and Abetting Claim Against Professionals

Plaintiffs claim the defendant lawyers and law and accounting firms aided and abetted the Trustee's alleged tortious mishandling of the bankruptcy estate. To state such a claim, plaintiffs must allege (1) the Trustee committed a tort that injured them; (2) the

---

[6]The Court recognizes contract law principles govern the construction of consent decrees, and that in certain circumstances, consent decrees may be enforced by third party beneficiaries. See Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 958 (8th Cir. 2002). This is not such a case, because "the third party must, at a minimum, show that the parties to the consent decree not only intended to confer a benefit upon that third party, but also intended to give that third party a legally binding and enforceable right to that benefit." Id. These essential elements are absent here. The Consent Decree confers nothing on these plaintiff-claimants.

professional defendants knew the Trustee's conduct constituted a breach of duty to plaintiffs; and (3) the professional defendants "substantially assist[ed] or encourage[d] [the Trustee] in the achievement of the breach." See Witzman v. Lehrman, Lehrman & Flom, 601 N.W.2d 179, 187 (Minn. 1999). "Substantial assistance" means "something more than the provision of routine professional services." Id. at 189. Courts construe the complaint strictly to assure the facts supporting each element of this claim are pleaded with particularity in order to establish each element. Id. at 187.

The plaintiff in Witzman alleged a trustee's accounting firm aided and abetted the trustee's misconduct by, among other things, preparing financial statements, setting up accounts, recording conveyances, and offering tax advice on certain transactions without disclosing these dealings to the trust beneficiary. The beneficiary was not the firm's client. The Minnesota Supreme Court found these allegations failed to state a claim.

Plaintiffs fare no better here. Defendants' alleged wrongful acts consist of purely professional services. Plaintiffs allege no specific facts suggesting these professionals possessed the requisite actual knowledge that the Trustee's conduct was tortious. Witzman, 601 N.W.2d at 189. It should go without saying that, in this case, several courts have found no wrongful or tortious acts at all on the Trustee's part. Accordingly, any claim alleging wrongful conduct that amounts to professional services must be

dismissed pursuant to Rule 12(b)(6).

    G.   <u>The Complaint Fails to Plead Fraud with Particularity</u>

Fed. R. Civ. P. 9(b) requires that fraud be pleaded with particularity.  At a minimum, plaintiffs must plead the "time, place and contents of the false representations, as well as the identity of the person making the representation and what was obtained or given up thereby."  <u>Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.</u>, 61 F.3d 639, 644 (8th Cir. 1995).  Plaintiffs bear these specific obligations for each defendant; group allegations do not suffice.  <u>See</u> <u>DiVittorio v. Equidyne Extractive Indus., Inc.</u>, 822 F.2d 1242, 1247 (2d Cir. 1987).

Plaintiffs' Complaint entirely fails to meet the requirements of Rule 9(b), providing another basis for dismissal.

III.  <u>Conclusion</u>

These plaintiffs, together and in concert, have made their specious allegations on multiple occasions.  It is manifestly unjust that they be permitted to do so again or without consequence.  Therefore, the Court, <u>sua</u> <u>sponte</u>, directs the Clerk of this Court to refuse any additional filings concerning this matter without the signature of an attorney properly admitted to this Court, or without specific leave of Court.

For the reasons set forth herein,

1.  Plaintiffs' Complaint [Docket No. 1] is dismissed with prejudice in its entirety.

2. Plaintiffs herein are enjoined from prosecuting any action against any defendant herein, absent the prior signature of an attorney properly admitted to this Court, or the prior written authorization from a Judicial Officer of this District.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 23, 2005

<u>s/ James M. Rosenbaum</u>
JAMES M. ROSENBAUM
United States Chief District Judge
